## HAYNE v. GOULD.

## GOULD v. HAYNE.

### (Circuit Court, S. D. California. February 13, 1893.)

### No. 176.

1. TENANCY IN COMMON—PARTITION—OLIVE RANCH.
   Where two persons contract to maintain and cultivate an olive ranch, contemplating, not a division of the property, but its building up, operation, and sale as a whole, but making no distinct or specific agreement to that effect, one party may enforce a division, under Code Civil Proc. Cal. § 763, providing that the court must order a partition "unless the property is so situated that partition cannot be made without great prejudice to the owners;" and the fact that defendant is a lawyer practicing in a distant state, having no knowledge of farming or olive culture, and that plaintiff would be unable to buy in the property if it should be sold as a whole, are unimportant in the determination of the question, for the situation of the property, not the circumstances of the parties, must control.

2. SAME—OLIVE RANCH—DIVISIBILITY.
   Where an olive ranch is so large that it can be divided into two large orchards, such as to justify the building of works for either the manufacture of oil or the pickling of the olives, one of two tenants in common can enforce partition, under Code Civil Proc. Cal. § 763, which secures this right unless great prejudice to the owners would result because of the situation of the property.

3. SAME—EXPENSES—MISTAKEN ESTIMATE.
   One of two tenants in common agreed to share the expense of a house, to be built by his cotenant at an estimated expense of $400. Owing to a mistake in the estimates of the material man and damage by a storm while building, the house actually cost $700. *Held*, that upon partition, the expense should be equally shared, and the house be regarded as the property of both parties.

4. SAME—ACCOUNTING—INTEREST.
   An agreement between two tenants in common of an olive ranch provided that one of them should pay the other a certain sum for a failure to plant certain trees. The debtor under this agreement began a suit for partition, thereby putting it out of his power to fulfill the contract. *Held*, that upon partition he should be charged with that sum, with interest from the date of the commencement of the suit.

5. SAME.
   One of two tenants in common of an olive ranch, who agrees with his cotenant to give his whole time and attention to the cultivation of the ranch, and who thereafter enforces a partition, should be charged with one half of his profits in real-estate dealings carried on by him while the

agreement was in force, and causing his absence from the ranch for con-siderable periods of time.

**6. SAME—NECESSARY EXPENSE.**

A suit for the partition of an olive ranch was brought by one of its two tenants in common, who, pending the suit, incurred necessary ex-penses in caring for the ranch. *Held*, that the cotenant should be charged with one half such expenses, with interest from the time of the respective payments, although he had given notice that he would not hold himself responsible for running expenses.

**7. SAME—AGREEMENT TO SHARE—EXPENSE OF FENCING.**

An agreement by two tenants in common to share the expense of fencing includes the expense of a survey necessary to determine the boundary of the land.

In Equity. Bill in a superior court of California by W. Alston Hayne, Jr., against Charles W. Gould, for partition of property owned by the parties as tenants in common. Defendant removed the cause to this court. Heard on bill, answer, and replication, and cross bill, answer, and replication. Decree for partition.

B. F. Thomas, (S. M. White, Edward J. Pringle, and Robert Y. Hayne, of counsel,) for Hayne.

Jarrett T. Richards, for Gould.

ROSS, District Judge. On the 26th of September, 1885, the plaintiff, who owned 160 acres of land in the Santa Ynez valley, about 45 miles from the city of Santa Barbara, and had contracted for the purchase from D. O. Mills of an adjoining tract of 80 acres, and also owned a large olive nursery, and certain personal property consisting of farm stock and implements, entered into a written contract with the defendant, who was a lawyer, engaged in the practice of his profession in the city of New York, but who was at the time on a visit to his brother and other relatives residing at Santa Barbara, by which the defendant was to acquire an undivided one-half interest in the above-mentioned real estate and personal property, and in the olive trees, to be planted as afterwards to be stated, by paying therefor $7,795 in this wise: Upon the approval of the title to the lands by competent counsel, defendant was to pay to Mills or his agent the unpaid purchase money due from plain-tiff to Mills, with interest, estimated to be about $1,300, and upon the recording of the deed from Mills to plaintiff the latter was to execute to defendant a deed for one undivided one half of all of the real estate, whereupon defendant was to pay to plaintiff $4,000, less the amount previously paid by him to Mills. During the plant-ing season of 1886, plaintiff was to set out upon the land at his own expense 5,000 olive trees of the age of three years, and, when those trees should be so planted, defendant was to pay plaintiff the further sum of $2,545, making payment in full for the undi-vided one-half interest in the real estate, 5,000 olive trees and the personal property, a schedule of which was annexed to the agree-ment. The agreement further provided that, during the plant-ing season of 1887, plaintiff should furnish an additional 5,000 olive trees to be set out on the lands, and for an undivided one-half inter-est in those trees defendant was to pay plaintiff $1,250, and also

one half of the expenses incurred by plaintiff after such trees should be loaded on proper vehicles for transportation to the lands. Plaintiff was to give his undivided time and attention to the business of cultivating and managing the lands as a farm and olive orchard, and, in consideration thereof, defendant agreed to pay the wages of a hired man and his board, such board being estimated at the rate of $3.50 a week. Plaintiff was to be at liberty to engage a cook for the farm, one half of whose wages (such, however, not to exceed $10 a month) was to be paid by the defendant. Plaintiff was to keep accurate and particular books of account of the whole business of the farm, and to render defendant quarterly statements thereof. Defendant was to be chargeable with no expense of the management of the farm, except for the cost of erecting a suitable fence, until after the first orchard of 5,000 olive trees should be set out as specified in the agreement. Defendant, upon receipt of the quarterly statements from plaintiff, was to promptly "discharge any and all indebtedness, incurred as hereinbefore expressed, which may be due from him to said Hayne; and, per contra, should the quarterly statements show a credit balance, or should any profit accrue, said Hayne agrees to pay said Gould one half thereof."

The foregoing is the substance of the written agreement entered into between the parties September 26, 1885. The evidence shows that the plaintiff was indebted at the time, but that he assured the defendant that the money to be paid by him for an undivided half interest in the property would enable plaintiff to discharge his indebtedness, and that he would not again go into debt. In discussing the venture, at or about the time of making the agreement, plaintiff spoke to defendant about a piece of adjoining land owned by Mills which it would be well for them to acquire, to be used as a farm and pasture in connection with the olive ranch. Defendant replied that he knew Mills, and could, he thought, deal to better advantage with him in New York than plaintiff could here, and would during the winter arrange for its purchase. Plaintiff also, about the same time, expressed the wish to build a cheap house on the property for his own use, and defendant agreed to bear half the cost of such a house, the estimated cost of which, according to the testimony of defendant, was $200, according to the testimony of defendant's brother, who acted as agent for defendant in respect to the property, $300, and according to the testimony of plaintiff, $450. The payments stipulated to be made by the defendant in and by the agreement of September 26, 1885, and slightly modified by a subsequent agreement afterwards to be noticed, were by defendant made, and he received a conveyance from the plaintiff of an undivided one-half interest in the property. On the 29th of December, 1885, plaintiff and defendant entered into a "nursery contract," by which Hayne agreed to provide and plant in proper condition, in the spring of 1886, olive cuttings to the number of at least 30,000, and not to exceed 50,000, on the land belonging to him or provided by him in Montecito, or on the ranch of Gould and Hayne in Santa Ynez, or partly on the one ground and partly on the other, and to care for and cultivate the cuttings for two years

after the planting, and until they should be ready for transporta-
tion and sale, Gould agreeing to pay for the cuttings at the rate of
2½ cents for each cutting, the payments to be distributed as follows:
First, after the cuttings should be fully set out, Gould to pay one
half of the whole sum due from him; and one year after the first
payment to pay half of the balance due from him; and two years
after the first payment to pay the entire balance due from him;
the cuttings to belong to Gould and Hayne, share and share alike.
The agreement further provided that at the expiration of two years
after the year of the planting, should there be remaining in the
nursery any small scattered trees, Hayne should have the privilege
of removing them and setting them out in a new nursery.

Plaintiff proceeded with the setting out of the 5,000 trees and the
cultivation and management of the ranch. Owing to the mistaken
estimates of the material man, and to the fact that a storm of rain
washed away a part of the adobe walls of which the house spoken
of was in part built, it transpired that its cost amounted to $700, and
this excess of cost over the plaintiff's estimate gave rise to the first
dispute between the parties, and resulted in much acrimonious corre-
spondence between them, and in a refusal of the defendant to pay
more than $150 towards the construction of the house, which sum
he paid. The next trouble that arose between the parties came
from the fact that plaintiff, in violation of his own suggestion to
defendant to acquire for their joint benefit the adjoining tract of
Mills, contracted to purchase that tract for himself, giving his prom-
issory notes therefor, in further violation of his promise to defend-
ant not to go into debt, and proceeded to work this newly-acquired
land with the teams of plaintiff and defendant. Against this conduct
on the part of plaintiff the defendant protested. Plaintiff replied
that he had not understood the matter as had the defendant, and'
that he entered into that contract of purchase in order to provide for
his brother, Benjamin Hayne. The controversy between plaintiff
and defendant growing out of this matter was settled by a tripartite
agreement, in writing, entered into March 11, 1886, between plain-
tiff and defendant and Benjamin Hayne, which agreement recites
that—

"Whereas, said Gould and said W. A. Hayne, Jr., own in common a certain
tract of land sometimes known as the 'Puerta del Sol Ranch,' in Santa Ynez,
Santa Barbara county, state of California, together with the houses and im-
provements thereon, and certain personal property, such as teams, plows,
implements of husbandry, etc., etc., and it is the present intention of said
Gould and said W. A. Hayne, Jr., to cultivate and plant the said tract of land,
with a view to making it an olive ranch; and whereas, said W. A. Hayne, Jr.,
has agreed to buy a certain other tract of land contiguous to the tract first
above mentioned, said second-named tract being sometimes known as the
'Mills Piece,' and containing two hundred and seven acres of land, or there-
abouts; and whereas, said W. A Hayne, Jr., in pursuance of his intention of
buying said Mills piece, has received from the present owner of said piece
an agreement for a deed thereto, and has given therefor four notes of the face
value of $600 each, or thereabouts: Now, therefore, for the purpose of settling
certain controversies between the parties hereto, and for other good and valu-
able considerations, the parties hereto agree as follows: Said W. A. Hayne,
Jr., agrees to convey to said Charles W. Gould all his right, title, and interest
under the contract for the deed of said land known as the 'Mills Piece,' and

said Gould agrees to take the transfer and conveyance of said right, title, and interest to the deed for said Mills piece from W. A. Hayne, Jr., provided that a sound title can be secured to said Gould of and to said Mills piece; and said Gould further agrees, provided that a sound title can be given him as aforesaid under the agreement made by said W. A. Hayne, Jr., to buy said Mills piece, to acquire said title. Said Benjamin Hayne agrees to and with the said Gould to forthwith cultivate and improve the said Mills piece, for the purpose of converting it into an olive ranch. And to this end the said Benjamin Hayne agrees to devote his whole time, attention, and energy; and when said Hayne shall have set out on said Mills piece five thousand three year old olive trees, in good condition, living and thriving, said Gould agrees to convey to said Benjamin Hayne one half of his interest in and to the contract for the deed to said Mills piece, to be assigned and conveyed to said Gould by said W. A. Hayne, Jr., as hereinbefore specified. Said W. A. Hayne, Jr., and said Gould also agree to permit said Benjamin Hayne to use the house and personal property now situated on said Puerta del Sol Ranch, for the purpose of cultivating and improving the Mills piece and the olive trees thereon to be set out."

By the tripartite contract defendant also agreed to advance money to the amount of $200, to pay for a fence around the land described in it to facilitate Benjamin Hayne in its proper care and cultivation. It was further provided that defendant should not become liable for any other expense connected with the improvement of that tract of land (excepting the taxes thereon) until after Benjamin Hayne should set out 5,000 three year old trees, as provided for, and shall have received a conveyance from defendant of an undivided one-half interest in the property. The tripartite agreement contained other provisions not necessary to be mentioned here.

Another written agreement, made between plaintiff and defendant on the 24th of September, 1886, recites that—

Whereas, the plaintiff, by the agreement of September 26, 1885, agreed to furnish, for the purpose of planting upon the ranch in that agreement described, five thousand olive trees of the age of three years, during the planting season of 1887, "and whereas, said Hayne cannot furnish said trees, it is now agreed between the parties hereto that in lieu thereof the said Hayne shall furnish olive trees for the purpose of planting on the said ranch, of the age of two years, and shall set out on said ranch during the planting season of 1887 three thousand of said trees; it being understood and agreed, nevertheless, that in case said Hayne shall be able so to do, he shall be at liberty to plant trees of the age of three years, the intent of this agreement being that said Hayne shall select the best of his trees, whether of the age of two years or three years. And in consideration of the premises said Hayne agrees to pay said Gould the sum of $687.50, and to liquidate this amount by devoting twenty per cent. of said Hayne's profits from the said ranch to the payment thereof until said sum shall be wholly paid, no interest thereon to be charged or collected by said Gould; and in case said ranch be sold on or before January 1st, 1889, said Gould agrees to accept, on or before January 1st, 1889, $500, in full payment of said sum of $687.50," etc.

Shortly after this the defendant, on learning that plaintiff had incurred a small blacksmith bill in the name of Gould and Hayne, protested against it, and demanded that the quarterly statements provided for by the contract should be accompanied by vouchers showing payment by the plaintiff, as a condition to the payment by defendant of his share of the expenses. This demand, and refusal on defendant's part, brought about a protracted and heated correspondence between the parties, in which, among other things, defendant complained

of plaintiff's repeated absences from the olive ranch, his engaging in other business, and his subsequent failure to give his undivided time and attention to cultivating and managing the ranch. This controversy terminated by the acceding of plaintiff to defendant's demand for the production of vouchers, and defendant's payment of his share of the expenses of the ranch up to the time of the commencement of this suit, which was commenced before the trees had reached a stage of profitable bearing. Upon its institution the defendant notified plaintiff that he would not bear any further expense in connection with its cultivation and maintenance, and forbade the contracting of any debts on his account.

The suit was commenced in one of the superior courts of this state by the filing of a complaint alleging, in substance, that the plaintiff and the defendant are the owners in fee simple, and seised and possessed as tenants in common, of the property in controversy, containing 240 acres of land, with a house thereon, for which house the plaintiff paid $550 and the defendant only $150. It prays for a partition, and that the division be so made that the portion upon which the house is situated be allotted to plaintiff, and for general relief. The case was on motion of the defendant transferred to this court. And here the defendant filed an answer to the complaint admitting that plaintiff and defendant are owners in fee, and seised and possessed as tenants in common, of the premises described in the complaint, and that each is the owner of an equal undivided one half thereof. The answer avers that the house was erected for the common benefit of the parties to the suit, and that plaintiff is not entitled to any preference of allotment by reason thereof, and that the property is so situated that partition cannot be had without great prejudice to the owners. The answer also contains certain affirmative allegations, the substance of which is as follows: It avers that prior to the defendant's connection with the property, the plaintiff was the owner in fee of a portion thereof, and had a contract of purchase for the remainder, and was also the owner of certain personal property; that in this condition of affairs the plaintiff and the defendant entered into an agreement, whereby the plaintiff was to plant a specified number of olive trees upon the property, and the defendant was to pay a certain sum of money, and was to become the owner of one half of the real and personal property; and that the plaintiff and defendant should, as and for a joint and common enterprise, employ and improve and develop the real property in and for the culture and commerce of olives; that the plaintiff should give his undivided time and attention to the business of cultivating and managing the lands as a farm and olive orchard, the proper current expenses of conducting the farm and orchard to be borne by plaintiff and defendant. It further avers that it was understood and agreed, and was an inducement to and one of the considerations of the defendant's embarking in the enterprise, that the property should be developed, improved, and conducted in the culture of olives as a joint enterprise, and that plaintiff should be and remain, until the property was sold, the associate of the defendant in that enterprise; that the property was

laid out and improved and the orchard planted as a single enterprise, and not with a view to a partition or division of it, and that it would be inequitable and in violation of the agreement to allow a partition to be had. The answer further avers that the defendant has faithfully performed his part of the agreement, and has advanced the necessary funds by means of which the title to the portion of the property held under the contract of purchase was perfected, and has done everything which he was required to do; but that plaintiff failed to perform his part of the agreement, and, in particular, that he has failed to furnish and set out the number of trees called for in the agreement; that he has not given his undivided time and attention to the cultivation of the lands as a farm and olive orchard, but, as defendant is informed and believes, has engaged in other business at different times for long periods at a place remote from the property, at great personal profit to himself, and to the loss and injury of the defendant and to their joint enterprise. The prayer of the answer is that the plaintiff's application for partition be denied, and that defendant be dismissed, with costs. To this answer a replication was filed by the plaintiff.

The defendant also filed a cross bill against the plaintiff. The cross bill alleges in substance the same matters which are averred in the answer, and in addition annexed thereto a copy of the agreement of September 26, 1885. It alleges that that agreement was, at plaintiff's request, and because he was not able to perform it, modified as to the number of trees to be planted, and in certain other particulars, by the subsequent agreement of September 24, 1886, which is also annexed to the cross bill. It avers that upon the institution of the partition suit the defendant served a written notice upon the plaintiff that the relation between them was terminated, and that any express or implied agency in or about incurring expense or costs concerning the property was revoked, and that defendant would not bear any further expense, nor pay further expenditures in relation to the property, nor make any further payment under the contract, and would hold the plaintiff responsible as bailee for all personal property on the place. The cross bill further avers that it is necessary that an accounting be had between the parties, and all their various differences adjusted in one suit in this court; and, among other things, prays that their affairs be wound up and adjusted, and that the sum to be found due to the defendant on the accounting be made a lien on the property, and that the property should be sold under the order of the court. The answer of the plaintiff to the cross bill admits that he entered into the agreements mentioned in the cross bill, but denies that the modification of the original agreement was because he was not able to perform that agreement, and avers that it was because certain parts of the ground were not suitable for the culture of olives, and because certain of his two year old trees were larger and better than some of his three year old ones. The answer to the cross bill then avers that plaintiff fully performed the original agreement as modified by that of September 24, 1886. It avers that, according to the true intent and mean-

ing of the original contract, occasional absences from the property were not forbidden; that the true intent and meaning of the agreement was that plaintiff should give as much time and attention to the property as was necessary or proper for the proper cultivation thereof; that the defendant is an attorney at law, and that he drew up the agreement, and that he assured plaintiff, who was ignorant of such matters, that such was the proper construction of such agreement, and that plaintiff relied upon such assurance, and relying thereon, and upon the faith thereof, was occasionally absent from the property; and that defendant is estopped from complaining of the absences of plaintiff. In regard to such absences the answer to the cross bill further avers that after the execution of the original contract the defendant agreed by parol that the plaintiff might be absent from the property for any period that he wished, not exceeding six months at any one time, provided that during such absence he would leave his brother Benjamin Hayne, who was residing on the property, and cultivating an adjoining place in connection with that, in charge of the place; that plaintiff relied upon the parol agreement, and acted upon the same, and, whenever he was absent, left his brother Benjamin in charge of the place; and that by reason thereof the defendant is estopped from complaining of such absences. In further regard to plaintiff's absences, the answer to the cross bill avers that subsequent to the execution of the original contract the parties entered into the nursery agreement hereinbefore mentioned for raising olive cuttings in Montecito, (about 50 miles from the property in controversy,) which contract required the plaintiff's presence in Montecito from time to time, and which was therefore a waiver pro tanto of the provision in the original contract. In further regard to the plaintiff's absences, the answer to the cross bill avers that the defendant knew of them, and made no objection thereto, (except on one occasion,) but acquiesced therein, and that he ought not now to be heard to complain thereof; that plaintiff's absences were only occasional, and that he gave as much time and attention to the cultivation of the place as was necessary or proper for the cultivation thereof in the manner required by the contract; and that during his absences the property received as much and as good attention as if he had been continuously present; and that the same has always been and is in excellent condition.

The answer to the cross bill denies that plaintiff engaged in any other business, without the consent of defendant, for long or any periods of time, or that any loss thereby resulted to the property. It admits that for a few weeks he entered into an arrangement with one D'Urban to sell real estate on commission, but that all he was to do was to impart certain information to D'Urban, which took no appreciable amount of time, and that even this arrangement lasted only a few weeks, and that hardly any business was done under it. It denies that defendant performed his part of the contract in any particular, but avers that he refused for a whole year to pay any part of the current expenses of the place, that he refused to pay his part of the cost of a survey, which was a necessary preliminary to fencing, and that he only paid a small portion of the

expense of the house built on the place for the benefit of the parties, and which was necessary for the property. It denies that there was any agreement that the property should be developed as a joint enterprise further than as appears from the original and modified contracts of September 26, 1885, and September 24, 1886, respectively, or that plaintiff should remain the associate of defendant until the property should be sold, or that the property should be disposed of as a whole, or that any such agreements or understandings were inducements and considerations for the defendant's embarking in the enterprise; and denies that there was any other agreement than the ones admitted, and pleads the statute of frauds as to any other agreement. It denies that the property was laid out or improved as a single enterprise, and not with a view to a partition or division, or that it is more valuable as a whole, or that a partition cannot be had without prejudice to the parties. It avers that plaintiff is without means to purchase the property should a sale be ordered, and that the defendant knows this, and seeks to have a sale for the purpose of depriving plaintiff of his interests in the property without adequate compensation. It avers that (except for the period of a year) the defendant paid the quarterly statements of the expenses of the property up to the commencement of the partition suit, and pleads that the account of such expenses is a settled account and ought not to be opened. It admits that since the commencement of the suit the defendant served upon the plaintiff a notice that the agency was terminated, and that he would pay nothing further on account of the expenses of the place, and avers that he has not paid anything further, and that to save the place from ruin and decay the plaintiff has ever since the commencement of the suit been compelled to pay, and has paid, the entire expenses of the property. It admits that there is some personal property, and offers to divide the same. The prayer of the answer to the cross bill is for a partition of the real and personal property, and that cross complainant be decreed to pay his share of the expenses of the house and of the survey, and his share of the expenses of the property pending the litigation, and for the adjustment of all of the matters of difference between the parties, and for costs, and for general relief. To this the usual replication was filed.

Upon a careful consideration of the record in the case, I do not think that the conduct of either party to the controversy commends itself to a court of equity. The attempt on the part of plaintiff to acquire the adjoining tract of Mills for himself, and not for himself and defendant, and the use of their joint teams thereon for his individual benefit, was a gross violation of fair dealing. Nor did the plaintiff give his undivided time and attention to the olive ranch, as in and by the original contract he agreed to do, for the evidence shows that he was not infrequently absent for considerable periods at a time, and for a brief time was connected with a man named D'Urban in the real estate business, from which plaintiff realized the sum of $30. The nursery agreement between

plaintiff and defendant, of December 29, 1885, however, contemplated absences by plaintiff from the olive ranch, and, as the evidence shows that the latter was kept well and properly cultivated and cared for, there is perhaps no just cause of complaint by defendant for such absences of plaintiff therefrom as the evidence shows, except the slight time spent by him in the pursuit of the real-estate business. The claim set up on the part of the defendant that he was induced to embark in the enterprise by plaintiff by glowing representations made by him of the profits of olive culture, thereby implying that advantage was thus taken of him by the plaintiff, has no just foundation. The defendant was a man of much larger business experience than the plaintiff, and, before entering into the agreement, sent his brother, who was a resident of Santa Barbara, to examine the property, and upon his favorable report defendant entered into the contract. He did so with his eyes open, and the pretense that advantage was thus taken of him in the inception of the enterprise is groundless. Nor is there any foundation for the claim put forth on behalf of the defendant that one of his motives for engaging in the venture was the freeing of the plaintiff from debt. There is nothing in the record to justify this pretension. Defendant paid his money for an undivided one-half interest in the property which he received; he paid it for his own benefit, and not for that of the plaintiff. His action, too, in regard to the house and fence is not commendable. It is true the cost of the house exceeded by a few hundred dollars the plaintiff's estimate of it, but this was based, as the evidence shows, upon a mistaken estimate of the material man, and a rain storm added to the cost materially by washing away a part of the adobe of which the house was partly built. Moreover, it appears that after it was built the defendant visited the ranch, and so far from making objection to the size of the house, of which complaint is now made by him, suggested an additional porch. Its cost, under the circumstances disclosed by the evidence, furnishes, in my opinion, no just ground of complaint on the part of the defendant, and his refusal to pay more than $150 towards its construction was and is inequitable. So, also, defendant's refusal to pay his share of the $15 paid by the plaintiff to the surveyor to accurately locate the line for the erection of the fence provided for in the written agreement of the parties. The erection of the fence was for the equal benefit of both parties, and the agreement to construct it included everything necessary to be done for its proper construction. It was not only proper, but highly important, that before building it the exact line that separated the land in question from the adjoining land should be ascertained, and the evidence shows that the services of the surveyor were necessary for that purpose. Then, too, the complaint on the part of defendant that none of the olive cuttings provided to be planted by the nursery contract of December 29, 1885, were set out on the ranch is unjust, for that contract was subsequently modified under date of March 11, 1886, by limiting the number of cuttings to 30,000, and providing that all of them should be set out "on land in Montecito belonging to Benjamin Hayne." There is

therefore no just cause of complaint on defendant's part that none of the cuttings were planted on the ranch, and the statement in his testimony that plaintiff "never set them out in Santa Ynez because he could not give his personal attention to them in Santa Ynez, with convenience," is not only without foundation in fact, but is an unworthy attempt to make it appear, contrary to the facts, that plaintiff's absences from the ranch were so frequent and of so long duration that he could attend the nursery with more convenience at Montecito than at the ranch. There are other evidences of a want of candor and fairness about the testimony of the defendant; notably that in answer to the inquiry on behalf of the plaintiff whether his brother George H. Gould was not his agent in respect to the property in question, to which his answer was:

"My brother George H. Gould has always been most kind in looking after my interest in Santa Barbara; and while I should not venture to call a voluntary kindness an agency, I am glad to express my appreciation for his generous assistance, which has been freely given whenever necessity arose."

The fact is that George H. Gould was his agent in respect to the property, as distinctly appears from the testimony of George H. Gould, in which he says:

"Soon after—I think in the month of October, 1885—my brother returned to New York, he left me in the position of agent of his, and I have maintained that position ever since."

It further appears from the record that, for nearly two years before the commencement of this suit, George H. Gould held a full written power of attorney from the defendant in respect to the property in question. I repeat, therefore, that by the record in the case neither party to the controversy is presented in a favorable light.

Looking at the whole record I entertain no doubt that at the inception of the venture, and at the time of the making of the several contracts spoken of, neither party contemplated a division of the property, but the building up and operation or sale of it as a whole. There was, however, no distinct or specific agreement to that effect; and the mere contemplation of the parties in respect to the venture into which they entered is not sufficient ground upon which to deny to one of the tenants in common a partition of the property if it is of such a nature as to admit of such division without great prejudice to the owners. It is by the Code of Civil Procedure of California provided as follows:

"If it be alleged in the complaint, and established by the evidence, or if it appear by the evidence, without such allegation in the complaint, to the satisfaction of the court, that the property, or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof; otherwise, upon the requisite proof being made, it must order a partition. * * *" Section 763, Code Civil Proc.

It is manifest that the circumstance that the defendant is engaged in the practice of his profession in a distant state, and has no practical knowledge of farming or olive culture, is unimportant, as is the pecuniary inability of the plaintiff to buy the property in the event it should be directed to be sold as a whole. The sit-

uation of the property, and not the personal circumstances of the parties, unconnected with their interests therein, is the question that must control the court in determining whether there should be a division or sale of the property. The evidence is far from showing that the land in question is so situated that it cannot be divided without great prejudice to the owners. On the contrary, I think it shows that there is no difficulty in the way of making a fair partition of it, quantity and quality relatively considered. The tract is a large one, and the number of trees so great as to make two very large orchards, according to the testimony of Mr. Cooper, a gentleman of large and long experience in olive culture, and such as justify the establishing of works necessary for either the manufacturing of oil or the pickling of the olives. The circumstance that through one corner of the tract a small stream of water runs will, of course, be given due consideration in making the partition.

For the reasons stated, the court is of the opinion that the real property in question should be decreed to be partitioned equally between the plaintiff and defendant, quality and quantity relatively considered. I think it inequitable, however, to grant the prayer of the complaint that the portion of the land upon which the house is built be awarded to plaintiff because of the improvements. The defendant should be decreed to pay one half of the cost of the house, less the $150 already paid by him therefor, with legal interest from the date when such payment should have been made, and the house regarded as equally the property of both of the parties. In the accounting between the parties which must be had, the plaintiff must also be charged with the $687.50 stipulated to be paid by him in and by the agreement of September 24, 1886, for his failure to plant the trees provided for by the original contract. Plaintiff having put it out of his power to pay that sum as provided for in the contract by the commencement of this suit, the amount must be deemed due from him from the time of its commencement, with legal interest from that time. There must also be an accounting of the personal property owned in common by plaintiff and defendant in connection with the realty, a sale of such personalty, and a division of the proceeds equally between the parties. The defendant is also equitably entitled to one half of the amount realized by plaintiff out of the real-estate business, with legal interest from the time of its receipt, as his undivided time and attention was by the terms of the contract to be devoted to the common venture, except as subsequently otherwise consented to by defendant. Reference has already been made to the absences of plaintiff from the ranch necessarily implied by the obligations imposed upon him by the nursery agreement entered into between the parties. The tripartite agreement provided that the plaintiff's brother Benjamin Hayne should live on the property in question in the suit, while cultivating the adjoining tract for himself and defendant, and both plaintiff and his brother testified that the defendant expressly consented that plaintiff might absent himself from the ranch when occasion required, provided his brother was left in

charge. This testimony of plaintiff and Benjamin Hayne, while denied by that of the defendant, finds some corroboration in the testimony of defendant's brother, George H. Gould, who, when asked, "Well, do you remember of your brother saying to Mr. W. Alston that he was perfectly willing for him to be absent from the place, provided Ben Hayne was left in charge?" answered, "I do not recollect anything as general as that. No, sir; in fact, I do not recollect in detail what was said on the subject." I also think it equitable that account be taken of the expenses necessarily incurred by the plaintiff in caring for the orchard since the commencement of the suit, and that of the expenses so incurred the defendant be charged with one half, with legal interest thereon from the time of the respective payments. In respect to the accounts already settled between the parties, neither the pleadings nor proofs are sufficient to justify the reopening of them. There must be a reference to the master to state the account, and an interlocutory decree in accordance with the views above expressed. It is so ordered.